CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 04 2019

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MARIA DEL PILAR POSE BEIRO, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:18CV00088 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CFA INSTITUTE, ) | By: Hon. Glen E. Conrad |
| ) | Senior United States District Judge |
| Defendant. ) | |

Maria Del Pilar Pose Beiro, proceeding pro se and in forma pauperis, filed this action against CFA Institute. The case is presently before the court on the defendant's motion to dismiss. For the reasons set forth below, the court will grant the defendant's motion.

### Background

The following facts are taken from the complaint and the written settlement agreement on which it explicitly relies. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (noting that the court could properly consider a document submitted by the defendant in determining whether to dismiss the complaint "because it was integral to and explicitly relied on in the complaint").

The plaintiff resides in London, England. In August of 2016, she enrolled in the CFA Program offered through the defendant in Charlottesville, Virginia. The plaintiff took the Level II CFA Exam in June of 2017. When the results were announced in August of 2017, the plaintiff learned that she had failed the exam.

Both before and after the plaintiff received her exam score, the plaintiff voiced a number of complaints to the defendant's customer service team. For instance, she complained that "very

poor facilities" were provided during the exam, that there was a one-week delay in receiving her exam score, and that the customer service team did not timely respond to her emails. Compl. 6, Dkt. No. 6. On August 4, 2017, the plaintiff received a telephone call from "Mr. Kaiser," a customer service representative, regarding her complaints. The plaintiff alleges that Mr. Kaiser verbally agreed to change the result of her exam to a passing score if she would stop complaining:

> He asked me how I wanted to resolve the matter; first I asked for an exam fee refund that was rejected by him; then I asked for a change of mark of my exam to 'a pass' . . . . Mr. Kaiser then said that he would be able to help me and offered me a retabulation. I knew what a retabulation was and suggested that this was not enough. I wanted a regrade. Mr. Kaiser agreed to get me a regrade of my exam to a pass if I stopped complaining. I agree[d] and he agreed to call me back on the 7th [of] August to confirm completion.

Id.

The plaintiff subsequently informed the defendant of her conversation with Mr. Kaiser and advised the defendant that she had recorded the phone call in which Mr. Kaiser had verbally agreed to give her a passing score on the exam. The plaintiff subsequently received an email from Geoff Macdonald, legal counsel for the defendant. In the email, Mr. Macdonald disputed the plaintiff's assertions and requested that she provide a copy of the purported recording of her conversation with Mr. Kaiser. The plaintiff alleges that she "felt that [Mr. Macdonald] was trying to intimidate [her]," and that "he wanted to damage [her] reputation saying that [she] was telling false statements." Id. 7.

On August 23, 2017, the plaintiff advised the defendant via email that she was "planning to bring this case to Small Claims Court" if the parties were unable to reach an agreement regarding the "misleading information provided" by the defendant and its agents. Id. In response, members of the defendant's "Professional Conduct department" advised the plaintiff that they were "opening an investigation for misrepresentation," based on the belief that the plaintiff had

submitted a "false invoice" requesting a refund of her exam fee. Id. 7–8. The plaintiff alleges that the investigation was undertaken to intimidate her, damage her reputation, and inflict psychological harm, and that it appeared to be a "conspiracy" against her. See id. at 8 ("I allege that Mr. Jason Kaiser and Mr. Geoff Macdonald collaborated with the Professional Conduct, during August 2017, to open an investigation. This seems a conspiracy against me."). The investigation was closed on January 11, 2018, at which time "Professional Conduct did not find [the plaintiff] guilty of misrepresentation." Id. 8.

Three days before the investigation ended, the plaintiff filed suit against the defendant in the General District Court for the City of Charlottesville. The plaintiff claims that, by that time, her "reputation at work was damaged." Id. Because the plaintiff did not receive a passing score on the exam and was the subject of an investigation by the defendant, the plaintiff lost income and "had to leave [her] work." Id.; see also id. 10 (noting that the plaintiff's manager thought she was a "liar").

The parties were scheduled to appear in state court on June 22, 2018. On June 20, 2018, the defendant presented the plaintiff with a written settlement agreement, through which the defendant sought to "resolve any and all claims against CFA Institute and/or its employees," including the claim filed in the General District Court for the City of Charlottesville. Settlement Agreement 1, Def.'s Ex. 1, Dkt. No. 9-1; see also Compl. 11 (discussing the settlement agreement). The written agreement provided that CFA Institute was willing to offer the plaintiff "a settlement in the amount of $750 (the equivalent of a refund of [her] exam fees for 2017, plus $100), and in addition a no-fee retabulation of [the plaintiff's] answer sheet for the June 2017 CFA Program Exam, Level II," if the plaintiff agreed to the remaining provisions and signed the agreement within 24 hours. Settlement Agreement 1. Both parties signed the settlement

3

agreement on June 21, 2018. Under the terms of the agreement, the plaintiff agreed to withdraw or dismiss any pending complaint or action against CFA Institute, and "release any claim against CFA Institute and related persons or entities as set forth above arising from [the plaintiff's] participation in the CFA Program or the provision of customer service to [the plaintiff]." Id. The agreement emphasized that the release provision would apply to "all claims" the plaintiff had or may have had, "whether known or unknown," as of the date she signed the agreement. Id. The agreement further provided that it contained "the entire understanding of the parties with respect to the subject matter hereof," that it "supersede[d] all prior understandings or agreements, oral or written, with respect thereto," and that it "shall be governed by and construed according to the laws of the Commonwealth of Virginia and shall be binding upon the parties, their successors, assigns and heirs." Id. 2.

On September 24, 2018, the plaintiff commenced the instant action against CFA Institute by filing a form "complaint for a civil case alleging breach of contract." Compl. 1. Liberally construed, the complaint appears to assert that CFA Institute breached the verbal agreement with Mr. Kaiser and the written settlement agreement by failing to change her exam grade to a passing score. The plaintiff also indicates that she is asserting two additional causes of action: "punitive damages for breach of contract" and "breach of contract accompanied by willful tort." Id. 6.

The defendant has moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The defendant's motion has been fully briefed by the parties and is ripe for review.

**Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to seek dismissal for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss

4

under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

The defendants have moved to dismiss the complaint on several grounds, including the following: (1) the plaintiff's claim for breach of an alleged oral agreement is barred by the settlement agreement; (2) the plaintiff fails to state a claim for breach of the settlement agreement; and (3) the plaintiff fails to state a claim for "willful tort." For the following reasons, the court concludes that all three arguments have merit.

CFA Institute first argues that any claim based on an alleged oral contract in August of 2017 is barred by the written settlement agreement. Under Virginia law, "settlement agreements are treated as contracts subject to the general principles of contract interpretation." Byrum v. Bear Inv. Co., 936 F.2d 173, 175 (4th Cir. 1991). Thus, "the preclusive effect of a settlement agreement should be measured by the intent of the parties." Ohio Valley Envtl. Coalition v. Aracoma Coal Co., 556 F.3d 177, 211 (4th Cir. 2009) (citation and internal quotation marks omitted); see also First Sec. Fed. Sav. Bank, Inc. v. McQuilken, 480 S.E.2d 485, 487 (Va. 1997) ("The scope of a release agreement, like the terms of any contract, is generally governed by the

5

expressed intention of the parties."). "Where the parties' intent is clear from the unambiguous terms of the contract, construed as a whole, [the court] need not and cannot resort to extrinsic evidence of intent." Bala v. Va. Dep't of Conservation & Recreation, 614 F. App'x 636, 639 (4th Cir. 2015) (citations omitted); see also Sweely Holdings, LLC v. SunTrust Bank, 820 S.E.2d 596, 602 (Va. 2018) ("Words matter, and words in a contract, when clear, supersede unarticulated intentions.").

Upon review of the settlement agreement, the court concludes that it bars any claim related to the alleged oral contract from August of 2017. By signing the written agreement and accepting a settlement in the amount of $750.00, the plaintiff agreed to "release any claim" against the defendant "arising from [her] participation in the CFA Program or the provision of customer service" to the plaintiff. Settlement Agreement 1. The plaintiff acknowledged that the release would apply to "all claims" she "may have, whether known or unknown," as of the date on which she signed the agreement. Id. The plaintiff further acknowledged that the settlement agreement contained the "entire understanding of the parties" and "supersede[d] all prior understandings or agreements, oral or written." Id. at 2. Based on the plain language of the settlement agreement, the plaintiff clearly waived the right to pursue her current claim for breach of oral contract, since such claim arises from the plaintiff's participation in the CFA Program and is based on an agreement or understanding that predated the written settlement agreement. Accordingly, the claim for breach of oral contract is subject to dismissal under Rule 12(b)(6).

The court likewise concludes that the plaintiff fails to state a claim for breach of the written settlement agreement. The plaintiff does not allege that CFA Institute failed to retabulate her answer sheet or pay her $750.00, as required under the plain terms of the settlement agreement. Instead, this claim also appears to be based on the fact that the defendant did not change her exam

result to a passing score. However, the plain language of the settlement agreement demonstrates that the CFA Institute owed the plaintiff no such obligation. The plaintiff acknowledges in the complaint that she understood the difference between a "retabulation" and a "regrade . . . to a pass." Compl. 6. Although the CFA Institute offered to perform a "no-fee retabulation of [the plaintiff's] answer sheet," the defendant did not agree to change her exam result to a passing score. Settlement Agreement 1. While the plaintiff is obviously dissatisfied with the outcome of the retabulation and, in hindsight, might have insisted on different contractual terms, the plain language of the settlement agreement controls. See Babcock & Wilcox Co. v. Areva NP, Inc., 788 S.E.2d 237, 249–50 (Va. 2016) ("It is the court's duty to declare what the instrument itself says it says. [W]hat the parties claim they might have said, or should have said, cannot alter what they actually said.") (alteration in original) (citation and internal quotation marks omitted). Because the plaintiff's claim for breach of the settlement agreement conflicts with the plain language of the contract, this claim must be dismissed.*

Finally, the court agrees with the defendant that the complaint fails to state a claim for "willful tort." Compl. 6. In her brief in opposition, the plaintiff appears to indicate that this claim is based on an alleged "conspiracy" on the part of several of the defendant's employees to undermine her ability to work in the financial industry. To the extent that the plaintiff asserts a claim for civil conspiracy, such claim is subject to dismissal for at least two reasons. First, the plaintiff does not allege that the defendant's employees conspired with anyone outside the company or operated outside the scope of their agency. Consequently, the claim is barred by the intracorporate immunity doctrine, under which "acts of corporate agents are acts of the corporation

---

* In light of the court's conclusion that the plaintiff fails to state a claim for breach of contract, the court need not address the request for punitive damages associated with the contract claims. Nonetheless, the court notes that "[t]here is a strong presumption in Virginia against awarding punitive damages for breach of contract." Cancun Adventure Tours, Inc. v. Underwater Designer Co., 862 F.2d 1044, 1048 (4th Cir. 1988) (collecting cases).

itself, and corporate employees cannot conspire with each other or with the corporation." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002); see also Rosenthal v. R.W. Smith Co., 260 F. Supp. 3d 588, 593–94 (W.D. Va. 2017) "[T]here cannot be a conspiracy between agents of a corporation operating within the scope of their duties."). Second, a civil conspiracy claim also requires proof that an "underlying tort was committed." Almy v. Grisham, 639 S.E.2d 182, 188 (Va. 2007); see also Terry v. SunTrust Banks, Inc., 493 F. App'x 345, 357 (4th Cir. 2012) (explaining that the "'unlawful act' element" of a civil conspiracy claim "requires that a member of the alleged conspiracy have 'committed' an 'underlying tort'"). Because the plaintiff does not identify any underlying tort committed by the defendant's employees, her conspiracy claim also fails on this ground.

## Conclusion

For the reasons stated, the court will grant the defendant's motion to dismiss. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This 4th day of February, 2019.

_____
Senior United States District Judge